UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Barton Roberts,

        Plaintiff,

vs.

Collin Gau (Warden of MCF Saint Cloud),
Sargent Kopel, CO Gondeck,
CO Gapinski, John Does 1 through 10 (Presently
unknown Minnesota Department of
Corrections Correctional Officers at
MCF Saint Cloud), StaffCare, Inc.,
and Dr. Michael Thompson,

        Defendants.

_____

Civil File: 0:16-cv-00797-RHK-LIB

**SECONDAMENDED
COMPLAINT and
JURY DEMAND**

    Plaintiff, Barton Roberts, for his causes of action against the Defendants above named, states and alleges as follows:

**PARTIES**

    1.    Plaintiff Barton Roberts is an individual currently residing in Stearns County, Minnesota.

    2.    Defendant Collin Gau was at all time relevant herein the Warden of the MCF facility at Saint Cloud ("MCF Saint Cloud") and was responsible for the training of the Correctional Officers at that facility. Defendant Collin Gau was at all times relevant herein an employee of the Minnesota Department of Corrections. As such he was an

agent of the Minnesota Department of Corrections ("DOC") and was acting under color of state law.

3.  Defendant Sargent Kopel is and/or was at all time relevant herein a correctional officer in the employ of the DOC at MCF Saint Cloud. As such Defendant Kopel was, at all times material herein, an agent of DOC and acting under color of state law.

4.  Defendant CO Gondeck is and/or was at all time relevant herein a correctional officer in the employ of the DOC at MCF Saint Cloud. As such Defendant Gondeck was, at all times material herein, an agent of DOC and acting under color of state law.

5.  Defendant CO Gapinski is and/or was at all time relevant herein a correctional officer in the employ of the DOC at MCF Saint Cloud. As such Defendant Gapinski was, at all times material herein, an agent of DOC and acting under color of state law.

6.  Defendants John Doe 1 through 10 are and/or were at all time relevant herein correctional officers in the employ of the DOC at MCF Saint Cloud. As such Defendants John Doe 1 through 10 were, at all times material herein, agents of DOC and acting under color of state law.

7.  Defendant StaffCare, Inc. ("StaffCare") is a Corporation organized and existing under the laws of the State of Delaware with its principle place of business at 5001 Statesman Drive, Irving, TX 75063. On information and belief, Defendant

StaffCare's authorized agent for service in the State of Minnesota is Corporation Services Company, 2345 Rice Street, Suite 230, Roseville, MN 55113.

8.  On information and belief, Defendant StaffCare, at all times material, had a contract with the DOC—either directly or indirectly through a third patty health services organization—to provide locum physicians to provide health care in its prisons, including at MCF Saint Cloud. As such, Defendant StaffCare and its employees were the agents of the DOC and were acting under color of state law at all times herein material. Defendant StaffCare is liable for the acts and omissions of its employees as *Respondeat Superior*. Defendant StaffCare was responsible for the training and supervision of its doctors.

9.  On information and belief, Dr. Michael Thompson is an employee of Defendant StaffCare and was, and is, a physician providing medical services to inmates at MCF Saint Cloud, including Plaintiff Barton Roberts. As such Dr. Thompson was, at all times material herein, an agent of DOC and acting under color of state law.

10.  All Defendants are being sued in their individual, as opposed to official, capacity.

## JURISDICTION AND VENUE

11.  This is a civil action arising under the Constitution of the United States and 42 U.S.C §§ 1983 and 1988. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331.

12. Venue is proper in this District pursuant to 28 U.S.C. §1391 because a substantial part of the events and omissions upon which this action is based occurred in this District.

## GENERAL ALLEGATIONS

13. On the morning of September 26, 2015, Plaintiff suffered a stroke while incarcerated at MCF Saint Cloud. At that time, he stood up, collapsed, became extremely dizzy, developed a headache, and developed vomiting. He reported to at least one of the Corrections Officers on duty on B Unit that he thought he was having a stroke. Because of his stroke, his recollections of some of the incidents of the next several days in the jail are not completely clear.

14. Over the course of the next several days, Plaintiff missed meals, told various COs he was very ill and needed medical attention, stayed in his cell, and went on Sick Call Lay In. He vomited in his cell numerous times. He was never provided any medical attention.

15. On Saturday, he missed lunch and dinner because he could not stand up. Several of the Corrections Officers on duty on B Unit were aware of his condition but he was not provided any medical attention. On one of the days—Plaintiff believes it was Saturday the 26th—a CO brought food to Plaintiff's cell because he couldn't stand up. Plaintiff made that CO aware of his illness and that Plaintiff needed medical attention and it was obvious that Plaintiff had been vomiting in his cell. The CO did not provide any such medical attention.

16. Over the course of several hours on Saturday, Plaintiff fell several times using toilet and continued to vomit. The Correctional officers on duty on B Unit were aware of this and got him no medical help. That evening, Plaintiff told one of the COs on duty on B Unit that he could not participate in standing head count because he could not stand up.

17. The next day, September 27, 2015, Plaintiff reported to several of the COs on duty on B Unit that he was suffering from blurred vision, headache, and extreme dizziness. He was not given any medical attention. Plaintiff missed breakfast and lunch because he could not stand. Rather than provide medical attention, Plaintiff was brought bag lunches. When Plaintiff's wife and daughter came to visit on the 27th, Plaintiff told the female CO who came to tell him about the visitors that he could not stand or walk, and that he was too sick to see his wife and daughter. No medical attention was provided.

18. On September 28, 2015, Plaintiff again reported his dire medical condition to several of the COs, including that he was still suffering from blurred vision, headache, and extreme dizziness. Plaintiff's reports and requests for medical treatment went unheeded and he was still not provided any medical attention. Plaintiff sent an African American prisoner who went by the name "New York," to sign the Plaintiff up for "lay in" and report that he could not make his job as a tutor. "New York" told Plaintiff that he had reported Plaintiff's condition and need for "lay in" to Defendant Kopel. Rather than provide medical care, Defendant Kopel came to Plaintiff's cell and told him to "get off

your f**king ass and sign yourself up for lay up." Plaintiff told Defendant Kopel that he needed medical attention and Kopel told him he was aware of the situation and would see what the medical staff wanted to do about. Defendant Kopel provided no medical attention.

19. Later in the day, Plaintiff was called downstairs to retrieve a TV remote he had ordered. Plaintiff left his cell for the first time in three days, but as he tried to go down the hall, was overtaken with dizziness. He told one of the COs on duty on B Unit that he could not go any further, and turned around to go back in his cell. Later, Defendant Kopel said to Plaintiff "I guess if you're too sick to go to work, your too sick to go get your package." Defendant Kopel, however, did not provide Plaintiff any medical attention.

20. Plaintiff asked Defendant Kopel for help at least two other times. Defendant Kopel's response was always the same. He told Plaintiff that he would see what he could or what the medical staff wanted to do. He never provided any medical attention. Eventually, one of the COs, it may have been Defendant Kopel, delivered Plaintiff's TV remote to his cell where Plaintiff lay suffering from blurred vision, headache, and extreme dizziness. No medical attention was provided.

21. Between September 28 and September 29, Plaintiff told Defendant CO Gondeck several times that he was extremely ill and needed medical help. Plaintiff was not provided any medical attention.

22. At some point between September 26 and September 29, 2015, Defendant a CO came to Plaintiff's cell and Plaintiff told him he was very ill and in need of medical attention. The CO told him to drink water. The CO did not get Plaintiff any medical attention.

23. Defendant CO Gapinski was in B Unit on September 28 and September 29, 2015 and made rounds that included Plaintiff's cell and was aware that he was in dire need of medical attention and failed to provide such medical attention.

24. Defendants Kopel, Gondeck, and Gapinski, while making rounds between September 28 and September 29, 2015 became aware of the vomiting that Plaintiff had experienced as that vomit was evident in his cell. No medical attention was provided.

25. On September 29, 2015, Plaintiff was still suffering from the symptoms described above but was able to walk short distances. He was transported to the Washington County Jail for a court appearance.

26. On information and belief, Defendants John Doe 1 through 10 were made aware between September 26 and September 29, 2015 either by Plaintiff himself, other inmates, or other COs that Plaintiff was in dire need of medical attention and all failed to provide any such medical attention or get Plaintiff medical help.

27. On October 1, 2015, Plaintiff was brought back to MCF Saint Cloud. Upon entering the facility, Plaintiff told the intake nurse that he had been sick for 6 days and nobody had provided any medical treatment. The nurse sent him to see jail doctor, Defendant Dr. Michael Thompson.

28.  Defendant Dr. Michael Thompson performed rudimentary hand-eye coordination tests and decided that Plaintiff's symptoms were being caused by an abscessed tooth. Defendant Dr. Michael Thompson sent Plaintiff to the jail dentist to have the tooth extracted. The jail dentist told Plaintiff and Defendant Dr. Michael Thompson that the tooth was not the cause of Plaintiff's vertigo and other symptoms, but Defendant Dr. Michael Thompson insisted that the dentist pull the tooth anyway. Defendant Dr. Michael Thompson administered no further medical treatment or diagnostic testing.

29.  At approximately 4:00 p.m. on October 1, 2015, Plaintiff managed to get to the dining hall for dinner. On his way back to his cell, he collapsed outside his cell. He told one of the COs on duty on B Unit—he believes it was Defendant Gondeck—that he thought he was having another stroke. His entire left side became numb, he was sweating profusely, and he began to again vomit. He was found to have a blood pressure of 160 over 120. When no doctor could be located, the intake nurse decided to finally send Plaintiff to the CentraCare Saint Cloud Hospital for treatment.

30.  Throughout the entire period from Plaintiff's first stroke on September 26 to the time he was at the Hospital on October 1, all Defendants exhibited a shockingly high degree of deliberate disregard for Plaintiff's medical condition and the substantial risk of serious harm to his health and safety.

31.  Defendant Dr. Michael Thompson exhibited the same deliberate disregard for Plaintiff's medical condition during his "examination" of Plaintiff.

8

32.     The MRI taken at CentraCare Saint Cloud Hospital confirmed an acute posterior circulation infarct. Large vessel studies indicated that Plaintiff has suffered an acute vertebral dissection.

33.     Plaintiff was admitted to the CentraCare Saint Cloud Hospital on October 1, 2015 for treatment of the two strokes he had suffered. He was discharged on October 5, 2015, and was sent to the MCF facility at Oak Park heights. At Oak Park Heights, Plaintiff continued to have difficulty walking and had considerable lightheadedness and vertigo. On November 13, 2015, Plaintiff was transferred to the MCF facility at Faribault.

34.     Plaintiff's symptoms continued at Faribault, but he did not receive the physical therapy, or the proper accommodations, that had been ordered for him. In late December 2015, Plaintiff was released from prison, after serving his sentence. Since his release, he has been treated, and continues to treat, for the sequelae of the two strokes he had at while MCF Saint Cloud.

## COUNT I
## Denial Of Due Process Right To Adequate Medical Care

35.     Plaintiff hereby realleges and incorporates by reference the allegations complained of above as if set forth specifically herein.

36.     While incarcerated at MCF Saint Cloud, Plaintiff had a constitutional right under the substantive due process clause of the Eight and Fourteenth Amendments to the United States Constitution to have his basic human needs met, including receiving

adequate medical care. Deliberate indifference to an inmate's serious medical needs constitutes a violation of Mr. Robert's Eight and Fourteenth Amendment rights.

37. Plaintiff's constitutional right to receive adequate medical care under the Eight and Fourteenth Amendments was clearly established.

38. Defendants' behavior far surpassed "mere negligence." Defendants willfully denied Mr. Roberts adequate medical care, and were deliberately indifferent to his medical needs. Plaintiff had objectively serious medical needs. It was obvious, as demonstrated by Plaintiff's complaints, his appearance while suffering from his symptoms, the reactions of his fellow inmates, and the objective findings made after he was finally brought to the hospital, that he required immediate medical attention. Furthermore, Defendants knew of and disregarded a substantial risk of serious harm to Mr. Roberts's health and safety. Defendants' acts and/or omissions in response to Mr. Roberts's medical needs were so grossly incompetent and inadequate as to shock the conscience.

39. As a direct and proximate result of Defendants' acts and/or omissions, as described herein, Defendants, while acting under color of state law, deprived Mr. Roberts of his federal constitutional right to receive adequate medical care in violation of the Eight and Fourteenth Amendment and 42 U.S.C. § 1983.

40. As a direct and proximate result of Defendants' acts and/or omissions, as described herein, Mr. Roberts suffered a second stroke that could have been prevented had he received timely medical care for his initial stroke.

41.     As a direct and proximate result of Defendants' acts and/or omissions, as described herein, Mr. Roberts has suffered and will continue to suffer pain and suffering and permanent disability.

## COUNT II
## Failure to Train
## (Against Defendant Collin Gau)

42.     Plaintiff hereby realleges and incorporates by reference the allegations complained of above as if set forth specifically herein.

43.     The injuries sustained by Plaintiff were a direct result not only of the Defendants' acts and/or omissions in violation of the Eight and Fourteenth Amendments to the federal constitution and 42 U.S.C. § 1983 as described herein, but also of constitutional violations caused by failure of Defendant Collin Gau to property train the Correctional Officers at MCF Saint Cloud in how to adequately investigate, assess, and evaluate inmates' medical needs, and how to determine whether to immediately provide medical care and/or seek outside medical care for ailing inmates.  Defendant Gau's failure to properly train the MCF Saint Cloud Correctional Officers in these ways amounted to deliberate indifference to Plaintiff's constitutional rights.

44.     On information and belief, the injuries sustained by Plaintiff may have also been a direct result of constitutional violations caused by failure of Defendant Collin Gau to property train the Nurses at MCF Saint Cloud in how to adequately investigate, assess, and evaluate inmates' medical needs, and how to determine whether to immediately provide medical care and/or seek outside medical care for ailing inmates.  Defendant

Gau's failure to properly train the MCF Saint Cloud nurses in these ways amounted to deliberate indifference to Plaintiff's constitutional rights.

45.  As a direct and proximate result of the Defendant Collin Gau's failure to properly train the MCF Saint Cloud Correctional Officers (and nurses), while acting under color of state law, as described herein, Plaintiff was deprived of his federal constitutional right to receive adequate medical care in violation of the Eight and Fourteenth Amendments and 42 U.S.C. § 1983.

46.  As a direct and proximate result of Defendant Collin Gau's failure to properly train the MCF Saint Cloud Correctional Officers (and nurses), as described herein, Mr. Roberts suffered a second stroke that could have been prevented had he received timely medical care for his initial stroke.

47.  As a direct and proximate result of Defendant Collin Gau's failure to properly train the MCF Saint Cloud Correctional Officers (and nurses), as described herein, Mr. Roberts has suffered and will continue to suffer pain and suffering and permanent disability.

## COUNT III
### Failure to Train
### (Against Defendant StaffCare)

48.  Plaintiff hereby realleges and incorporates by reference the allegations complained of above as if set forth specifically herein.

49.  The injuries sustained by Plaintiff were a direct result not only of the Defendants' acts and/or omissions in violation of the Eight and Fourteenth Amendments

to the federal constitution and 42 U.S.C. § 1983 as described herein, but also of constitutional violations caused by failure of Defendant StaffCare to property train its doctors in how to adequately investigate, assess, and evaluate inmates' medical needs, and how to determine whether to immediately provide medical care and/or seek outside medical care for ailing inmates. Defendant StaffCare's failure to properly train its doctors in these ways amounted to deliberate indifference to Plaintiff's constitutional rights.

50. As a direct and proximate result of the Defendant Staffcare's failure to properly train its doctors, while acting under color of state law, as described herein, Plaintiff was deprived of his federal constitutional right to receive adequate medical care in violation of the Eight and Fourteenth Amendments and 42 U.S.C. § 1983.

51. As a direct and proximate result of Defendant Staffcare's failure to properly train its doctors, as described herein, Mr. Roberts suffered a second stroke that could have been prevented had he received timely medical care for his initial stroke.

52. As a direct and proximate result of Defendant StaffCare's failure to properly train its doctors, as described herein, Mr. Roberts has suffered and will continue to suffer pain and suffering and permanent disability.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendants, and each of them, jointly and severally, as follows:

    A.    Finding that Defendants, and each of them, committed acts and

omissions that constituted violations of the Eight and/or Fourteenth Amendment to the United States Constitution, actionable under 42 U.S.C. §1983;

  B. Awarding judgment in favor of Plaintiff against the Defendants, and each of them, jointly and severally in an amount to be determined at trial as and for compensatory damages;

  C. Awarding Plaintiff all applicable pre-judgment and post-judgment interest;

  D. Awarding Plaintiff his attorney's fees and costs pursuant to 42 U.S.C. § 1988 and/or his contingency fee agreement; and

  E. Awarding such other and further relief as the Court may deem just and equitable.

## JURY DEMAND

A trial by jury on all issues so triable is hereby requested.

Dated:  March 17, 2017

       **BENNEROTTE & ASSOCIATES, P.A.**

       By:  *s/ Vincent J. Moccio*
         Vincent J. Moccio (#184640)

       3085 Justice Way, Suite 200
       Eagan, Minnesota 55121
       (651) 482-9257
       Email: vincent@bennerotte.com

       **ATTORNEYS FOR PLAINTIFF BARTON ROBERTS**