UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Barton Roberts,                                          Civ. No. 16-797 (RHK/LIB)

                          Plaintiff,
v.                                                       **MEMORANDUM AND ORDER**

Sergeant Kopel, CO Gondeck,
CO Gapinski, and John Does
1 through 10,

                          Defendants.

---

This matter is before the Court on Defendants' Motion for Summary Judgment. For the following reasons, the Motion is granted.

## BACKGROUND

In September 2015, Plaintiff Barton Roberts was an inmate at the Minnesota Correctional Facility (MCF) in St. Cloud. (2d Am. Compl. (Docket No. 54) ¶ 13.) Late on Friday, September 25, he began feeling ill. (Moccio Decl. (Docket No. 98) Ex. 1 (Barton Dep.) at 184.) He was vomiting and felt dizzy. (Id.) He reported his symptoms to an unidentified passing corrections officer, but the officer did not assist him. (Id.) It is undisputed that the only three named Defendants, Corrections Officers Craig Gondeck and Curtis Gapinski and Corrections Sergeant Jay Kopel, were not on duty at the time Roberts fell ill. (Gondeck Aff. (Docket No. 86) ¶ 2; Gapinski Aff. (Docket No. 84) ¶ 3; Kopel Aff. (Docket No. 85) ¶ 2.)

Nor did any of these Defendants work at MCF St. Cloud over the weekend of September 26 and 27. (Id.) Roberts acknowledges that there is no physician on duty at

the prison over the weekend; inmates who are ill may see a nurse. Roberts did not request to see a nurse, although he contends that unidentified corrections officers who were on duty that weekend were aware that he was ill.

All Defendants worked at the facility on Monday. (Gondeck Aff. ¶ 3; Gapinski Aff. ¶ 4; Kopel Aff. ¶ 3.) That morning, Roberts asked another inmate, identified only as "New York," to tell the corrections officers that Roberts was too ill to report to his prison job. (Roberts Dep. at 17-18.) Somehow, Roberts's name was put on the sick call list, but that list showed that Roberts needed to see a dentist, not a physician. (Marisam Aff. (Docket No. 80) Ex. 6.) Roberts denies asking New York or anyone else to put him on a dental sick call list and denies that the handwriting on the list is his. (Roberts Dep. at 18.) Roberts contends that he spoke to all three Defendants on Monday, September 28, and that each either ignored his symptoms, minimized his illness, or refused to help him.

A nurse examined Roberts on Tuesday, September 29, after he was transported to Washington County for a court appearance. The nurse told Roberts to drink water and keep an eye on himself. (Id. at 22-23; see also Marisam Aff. Ex. 7 (Washington County Jail intake nurse's notes).) Roberts did not return to MCF St. Cloud until Thursday, October 1. The intake nurse at MCF St. Cloud examined Roberts, who complained of vertigo-like symptoms. (Roberts Dep. at 81.) The nurse called the on-duty physician, who thought the vertigo symptoms might be caused by an abscessed tooth. (Id. at 82-83.) Roberts then went to the facility's dentist, who extracted the tooth. (Id. at 8-9.) Just after dinner that evening, Roberts collapsed outside his cell. (Id. at 85.) Gondeck, who was doing rounds, immediately requested emergency care for Roberts. (Id. at 86-87.) After a

nurse examined him, he was transported by ambulance to the hospital, where he was diagnosed as having suffered a stroke. (Id. at 88, 225.) Roberts did not return to MCF St. Cloud, and was ultimately released from prison at the end of December 2015. (Zetah Aff. (Docket No. 89) Ex. 2.)

Roberts's expert witness, Dr. Scott Lipson, opined that Roberts first experienced a stroke late on September 25 or early on September 26. (Marisam Aff. Ex. 8 (Lipson Expert Report) at 2.) According to Dr. Lipson, had the facility properly recognized Roberts's symptoms as a stroke at that time, he could have received immediate and time-sensitive treatment that would have minimized the damage the first stroke did to his neurological system, and he would not have experienced the second, more damaging, stroke on October 1. (Id. at 4.)

Roberts brought this lawsuit initially against not only the three named Defendant corrections officers, but also against MCF St. Cloud Warden Collin Gau, the private prison healthcare provider, and the physician who examined him on October 1. (Compl. (Docket No. 1) ¶¶ 2, 4, 6.) Roberts resolved his claims against the physician, the healthcare provider, and Warden Gau, and those claims were dismissed with prejudice. (Docket Nos. 68, 77.) All that remains is Roberts's claim that the three corrections officer Defendants violated 42 U.S.C. § 1983 because they were deliberately indifferent to Roberts's serious medical needs. Defendants seek summary judgment on that claim.

**DISCUSSION**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The

Court must view the evidence and inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

To establish a claim of deliberate indifference to serious medical needs under 42 U.S.C. § 1983, a prisoner must show both "an objectively serious medical need" and "that the defendant actually knew of, but deliberately disregarded, such need." Vaughn v. Gray, 557 F.3d 904, 908 (8th Cir. 2009) (citations omitted). In addition, because the prison officials here are state actors, Roberts must overcome their qualified immunity defense. To do this, he must show that "the facts, viewed in the light most favorable to [him], demonstrate the deprivation of a constitutional or statutory right" and that "the right was clearly established at the time of the deprivation." Howard v. Kan. City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009). "Intentional delay in providing medical treatment shows deliberate disregard if a reasonable person would know that the inmate requires medical attention or the actions of the officers are so dangerous that a knowledge of the risk may be presumed." Gordon ex rel. Gordon v. Frank, 454 F.3d 858, 862 (8th Cir. 2006).

Roberts's claim that Defendants were deliberately indifferent to his serious medical needs depends in large part on the prison's failure to get him medical help over the weekend of September 26 and 27. But these Defendants cannot be liable for anything that happened over the weekend, because they were not at the prison during that time. Roberts claims that he was too sick to notice which corrections officers he encountered during the weekend for the purpose of naming them in this lawsuit, and while the Court is sympathetic to Roberts's plight, the Court cannot hold a Defendant liable for the actions of other individuals. The three Defendants were not at the prison over the weekend and their liability can only arise out of actions they took or failed to take on Monday, September 28.

Roberts also argues that the three Defendants were deliberately indifferent for not recognizing the seriousness of his symptoms on Monday, and thus that summary judgment is inappropriate. An objectively serious medical need is one that is either supported by a physician's diagnosis or is "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Bailey v. Feltmann, 810 F.3d 589, 594 (8th Cir. 2016) (quotation omitted). "Establishing the subjective component of a deliberate indifference claim requires showing 'a mental state akin to criminal recklessness' and neither negligence nor gross negligence are sufficient." Ryan v. Armstrong, 850 F.3d 419, 425 (8th Cir. 2017) (quoting Thompson v. King, 730 F.3d 742, 746-47 (8th Cir. 2013)).

The evidence in the record is that Roberts, or someone on Roberts's behalf, signed Roberts up for dental sick call, not medical sick call, on Monday morning. This evidence

could not have alerted any of the three Defendants that Roberts was suffering from a serious medical need. And Roberts concedes that he did not ask anyone to sign him up for medical sick call on Monday, showing that not even Roberts understood the serious nature of his symptoms. Roberts claimed that he told Defendant Gondeck that he needed medical attention on Monday, but Gondeck told him to drink water and that he would take care of Roberts on the next round of head counts. Gondeck did not report Roberts's illness to a prison health care provider on Monday. Likewise, Roberts alleges that he told Defendant Gapinski that he needed medical help on Monday, but Gapinski did not help him. Roberts also contends that he passed Defendant Kopel in the hallway on Monday as Roberts was trying to go to lunch. According to Roberts, Kopel berated Roberts for having another inmate sign him up for sick call. Roberts asserts that he asked Kopel for medical assistance but did not receive any.

Roberts was unable to make it to lunch, because he allegedly collapsed on the way and was forced to return to his cell. When he saw a nurse on Tuesday morning, the nurse suspected that he was suffering from the flu. Indeed, even the physician who first examined Roberts early in the day on October 1 suspected the flu as the cause of his symptoms, and it is undisputed that Roberts provided both medical professionals with a full accounting of his illness, including his symptoms over the weekend and on Monday.

Roberts has failed to establish that, as of Monday, September 28, his medical needs were so obvious as to put Defendants on notice that he needed immediate medical treatment. He was vomiting and experiencing dizziness, something that not even the medical professionals who later examined him recognized as signs of a stroke. He cannot

6

ascribe specialized medical knowledge to corrections officers, and his claim therefore fails at the first step of the analysis.

And even assuming for the sake of argument that Roberts has established an objectively serious medical need, he cannot establish that any of the Defendants were criminally reckless in refusing to send him for medical treatment. Defendants assert that the fact that a nurse saw Roberts on Tuesday and did not recognize that he was suffering from a stroke means that their conduct on Monday was not deliberately indifferent. Roberts counters that his condition improved from Monday to Tuesday, and that he was so ill on Monday that it should have been obvious that he needed medical assistance. But he told the nurse all of his symptoms, and the nurse did not recognize the symptoms of a stroke. Neither did the physician who examined Roberts on October 1. Again, Roberts cannot expect a layperson such as a corrections officer to recognize symptoms when a medical professional to whom those same symptoms are recounted does not.

Further, Roberts's claim depends on the alleged delay in treating him actually causing harm. See Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005) (noting that an inmate alleging deliberate indifference based on a delay in medical treatment must "establish the detrimental effect of [that] delay"). But his expert opines that he should have been treated within hours of his first stroke to ameliorate the harm to his nervous system and reduce the risk of a second incident. (Marisam Aff. Ex. 8 at 4 (Dr. Lipson's opinion that the second stroke "would very likely have been prevented with appropriate and timely medical care, if provided at the onset of his initial stroke on September 26,

7

2015.").) Defendants were not on duty within hours of Roberts's first stroke, and could not therefore have caused the alleged harmful delay.

Nor can Roberts raise a genuine issue of fact with his second expert, a former prison nurse, who opines that Defendants were deliberately indifferent. (Moccio Decl. Ex. 5.) An expert cannot offer a legal opinion, especially as to the ultimate issue in the case. The expert also opines that Defendants did not comply with the standard of care for prison facilities in Minnesota, but that opinion is relevant as to whether Defendants were negligent, not whether any Defendant met the heightened standard akin to criminal recklessness that applies to deliberate-indifference cases. Here, there is simply no evidence that these Defendants disregarded Roberts's serious medical needs that a reasonable person would have recognized as such, much less that they were criminally reckless in doing so.

**CONCLUSION**

Roberts has failed to establish that there are genuine issues of material fact on his deliberate-indifference claim. Accordingly, **IT IS HEREBY ORDERED that** the Motion for Summary Judgment (Docket No. 78) is **GRANTED** and the Second Amended Complaint (Docket No. 54) is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 23, 2017

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge